## SUPREME COURT—IN EQUITY.

CHARLES N. SPENCER *vs.* N. F. BENNET *et als.*

AN AGENT executing his authority within the usual scope of the business en-trusted to him, binds the principal by his acts.

If there are any express or unusual limitations, binding the exercise of such authority in the ordinary course of the business, they cannot affect the right of the purchaser, who dealt with the agent in ignorance of them.

An authority to sell, implies an authority to sell on a credit, if that be usual.

The allegation of fraud is not sufficient; it must be proved, not surmised. The Court will be cautious in sustaining charges of this character.

ALLEN, C. J.

The complainant alleges that the respondents are owners of the brig "Mary Ellen," and a cargo of lumber, part of which is on board, and the balance on the wharf in Honolulu, adjacent to said brig ; and that Thomas Spencer, one of the respondents and owners aforesaid, residing at Hilo, was duly authorized to make sale of said cargo, and that he did enter into a contract with him for the delivery of the same about the 1st of Feb., when it should arrive at Hilo, at twenty dollars per thousand feet for boards, and five dollars per thousand for shingles, of which there was a memorandum in writing. He further alleges that the brig arrived at Hilo, and that he was ready on his part to complete the contract, but that the master of the brig, who is also one of the respondents, refused to land the cargo, and proceeded with the same to Honolulu.

The respondents deny the authority of said Spencer to make the contract with the complainant for the sale of the lumber ; they declare that the agent of the vessel, Mr. J. S. Walker, and a respondent in this suit, ordered certain articles, such as flour, hams, potatoes, etc., designed especially for the whaling fleet at Hilo, together with two hundred thousand shingles, and the balance of room in the vessel to be occupied with assorted lumber, such as last cargo, which they thought at the time, would be but a small portion of the cargo. They further allege that the master, apprehensive that the vessel would not arrive in time for effecting sales to the fleet, made larger purchases of lumber than it was originally intended. They further say that

it was arranged by the owners that the vessel on her réturn should first visit Hilo, in order to supply the defendant Spencer such portions of said edible cargo as he might find a demand for by the whaling fleet, and such portions of the lumber as he might require in the legitimate course of his business.

The first question which arises is, had Spencer authority to make sale of the cargo of the "Mary Ellen," and, was he under any limitation of power so to do? It is admitted that the cargo was ordered for the Hilo market, and that the same was to be consigned to him. This was the agreement at the time the vessel sailed from Honolulu. So far then as the owners were concerned, they were bound by his contract, if his authority was without limitation. Spencer swears that the lumber was the material portion of the cargo, which he wanted at Hilo, and he was to take the whole of it if he pleased, the same as he had a right to take any other article. He testifies that he had unlimited control of the sale of the cargo at Hilo, by agreement with the agent of the brig at Honolulu, at the time the memorandum of the cargo was made up. But, it is asserted that the brig has brought more lumber than was expected, and, therefore, Spencer was not authorized to make a sale for the whole amount brought. The respondent testifies that, if all the articles ordered had been put on board, she would have brought about fifty thousand feet, whereas she brought sixty-seven thousand feet. There would be force in the reasoning, so far at least as the agent is concerned, that if ten thousand feet of boards were ordered only, whether it would be competent for him to make sale of the cargo, should there be one hundred thousand feet, and he would be responsible for any violation of his duty. It would be a different state of facts from what any of the parties anticipated. It appears by the evidence that Mr. Spencer sells lumber on commission, and had on hand on the 1st January one hundred and two thousand feet. Now, on the answer alone of the defendant, was this sale in the legitimate course of his business, and especially when the course of business of importing merchants is regarded? Was it not his duty to make sale in bulk, if he obtained the full market price, rather than .to have enhanced his commission, and prolonged the adjustment of the adventure by retailing it? It seems to

me that it was the exercise of a sound discretion and clearly within the powers and duties of his agency. When there is added to this the position and unequivocal testimony of Spencer, that he was, by express agreement, to have full power and control over the consignment, the question of authority is beyond controversy.

It is in testimony by Mr. Raplee that he was present when the memorandum for the cargo was agreed upon, and the understanding was that the brig was to touch, first at Hilo, when she came back for the purpose of discharging whatever part of the cargo Capt. Spencer might dispose of, or require ; I cannot say that they had any idea that he would sell the whole cargo in bulk, but my impression is that they had no idea that he would sell it in bulk. I do not think there was any prohibition to Spencer from selling the lumber.

It is further contended that the sale was fraudulent ; if this is proved, the sale is void ; but, fraud must be proved, not surmised. The allegation is not sufficient. It is contended, first, that Spencer had no right so long before the arrival of the vessel to make a sale, and especially to his brother. The vessel had been absent from Honolulu from the 9th January to the 4th February, twenty-five days, and she could reasonably be expected in forty or fifty days. It appeared in evidence that the cargo, prior to this, sold at Honolulu for $16 50 per thousand, less some expenses, and there is no evidence that Spencer had received intelligence that lumber would probably rise, and in point of fact, there was no advance in Honolulu till February 4th, the very day this contract was completed in Hilo. The letter of Mr. Walker informing Capt. Spencer that lumber was rising in the market was dated the 4th at Honolulu,—of course Spencer could not have had this intelligence. But as the agent at Honolulu had made sale of the lumber on the 31st of January to arrive, the owners cannot with good grace complain of their agent at Hilo for selling on the 4th February the cargo to arrive. The price which the agent of the brig sold the cargo for at Honolulu, was $22 per thousand and $4 75 per thousand for shingles, on four months credit. While Spencer, the agent at Hilo, sold the boards for $20 per thousand and $5 per thousand for shingles, on 60, 90, 120 days, which is an average of three months,

and the additional expense of delivering the lumber at high water mark, but this expense was not accurately proved. This difference is not sufficient to brand the transaction with fraud— so far as price, time of credit and time of sale in advance of the arrival of the cargo applies. The same objections exist against the sale at Honolulu and Hilo, but there is no evidence of fraud in either case, but as much in the one as the other.

It is further contended that Charles N. Spencer, being a brother of the agent, was evidence of fraud in the sale; if there were other evidence of a fraudulent character, this relationship would have weight. We look with great caution upon contracts made with relations, and if there are badges of fraud in the circumstances of the negotiation, it would be void, and it is said that he has no property, and, therefore, not worthy of credit. He is represented to be a young man of industrious habits and worthy of confidence, and that the merchants would give him credit to the amount of this purchase, if it was apparent that a sale could be made of the goods purchased. Captain Spencer says he has not had a settlement with his brother, who has been in his employment some eight years, but he believes that he is owing him a considerable sum of money, and that he has unbounded credit with him. Although I do not regard that there is the slightest evidence of fraud in this transaction, still when the kindred of an agent for the sale of property are proposing to purchase, it is the safer and better way for the agent to consult the principal especially, and procure his approval in all cases, when it can seasonably be done. It is in better taste and better judgment. Fraud ought not to be lightly charged. Reputation and credit are valuable to all men, and none more so than to merchants, and courts will be very considerate and cautious in sustaining charges of this character. There are many other circumstances commented upon, which it is contended are evidences of fraud—such as not notifying the agent here of the sale, especially when he wrote him on other subjects immediately after the date of the sale. This might, in connection with other circumstances of fraud, have some weight—but as none exist, this omission of itself has no weight. It would be weak evidence of itself to convict a man of antedating a contract for a fraudulent purpose.

But, if the agent had executed his actual authority—if the purchaser did not know it—the principal is bound, unless the agent went beyond the usual scope of business. If there are any unusual limitations, it must be in evidence that the party dealing with the agent knew them. It is admitted that the sale was to be made in the usual course of business. Now, unless express stipulations are imposed upon one to sell by retail, I should regard it within his discretion to sell in any quantity he deemed advantageous to his employers. Indeed, sales for importers by the quantity are preferred, and it may be called the usage, and the sales by retail exceptionals, and which, to justify the agent, would require particular limitations; still these limitations cannot affect the right of the purchaser, who dealt with the agent in ignorance of them. The respondent's testimony is not sufficiently clear to fix any limitations, for, while he testifies that the agent had authority to dispose of such portion of the cargo as he pleased, it was his impression that it was not to be sold in bulk, although, he says, there was no express prohibition, and if there had been, it is not in evidence that the complainant knew it, and, therefore, cannot affect his rights. If a person puts goods into the custody of another, whose common business it is to sell without limiting his authority, he thereby confers an implied authority upon him to sell them. An authority to sell implies an authority to sell on a credit, if that be usual. (Pickering *vs.* Bush, 15 East. 38 ; Soltus *vs.* Everett, 20 Wend. 267, 280 ; Anderson *vs.* Coonley, 21 Id. 279 ; Valentini *vs.* Piper, 22 Pick. 92.) In this case the cargo was consigned to the Hilo market in the first place, and Spencer had the usual powers of a commission merchant in making the sale ; and, therefore, whatever was done by him within the legitimate scope of such authority was obligatory on his principal. A commission merchant should be very cautious in making sales in advance of the arrival of the cargo, for it is his duty to see that his principal shall have the chances of a profit.; at the same time, if his conduct is not judicious while he acts within the scope of his authority, third parties are not to be injured by it, nor his contract with them to be defeated, and especially when it would implicate three respectable men—and when two of whom had sworn that the contract was made on the date it purports to be.

In the letter of Mr. Walker to Mr. Spencer of the 18th February, he reasons upon the advantages of the sale to Lewers as tending to advance the price of lumber, and that would be for his interest, by giving him the control of it, but he does not intimate that his sale should supercede Spencer's, because he had no authority to make the sale at Hilo.

The authority having been conferred upon the agent at Hilo, continued until withdrawn, and, therefore, a sale made at Hilo while the authority subsisted was obligatory on the principals, and it is not alleged that the authority given him, when the memorandum of the cargo was made, had been withdrawn, or in any degree modified, at the time of sale to complainant.

The decree therefore is, that the respondents deliver to the complainant the lumber now on board the brig "Mary Ellen," and that which has been unladen from her since her arrival in the port of Honolulu—and for costs.

Mr. Harris for plaintiff.

Mr. Montgomery for defendant.

